HYDROTEX INDUSTRIES *v.* SHARP.

4-8424                                                      208 S. W. 2d 183

Opinion delivered February 9, 1948.

*A. D. Whitehead,* for appellant.

*Ward & Ward,* for appellee.

Ed. F. McFaddin, Justice. This appeal involves the question of an implied warranty.

In October, 1944, appellees, Glen Sharp and Herman Young, were partners engaged in painting houses and other buildings in Lee county, Arkansas; and appellant was engaged in the manufacture and distribution of paint and kindred products, with its home office in Dallas, Texas. By two orders—one dated October 24, 1944, and the other, October 31, 1944—appellees, for use in their work, ordered from the appellant certain of its paint at the total invoice price of $940.60. These were written orders solicited from appellees by the salesman of appellant. The paint was delivered to appellees in November, 1944. In April, 1945, they remitted $281.40 for the portion used, and attempted to return the unused portion to the appellant. The returned shipment was refused by appellant, and left with the carrier; and then appellant filed this action against appellees for $659.20 alleged as balance due on account for the paint. The defense of appellees was that appellant breached the implied warranty, *i. e.,* appellees claim that the paint was worthless for the purposes intended. The cause was tried to a jury, and resulted in a verdict and judgment for appellees; and this appeal is an effort to reverse that judgment. Appellant urges the two points which we will list and discuss.

I. *Appellant's Prayer for an Instructed Verdict.* The trial court correctly ruled that, since the order and original receipt of the paint was admitted by appellees,

therefore the burden was on them to prove that there was such a breach of implied warranty as would defeat appellant's action. To meet this burden, appellees offered evidence designed to show: (1) that appellees were experienced workmen and knew how to paint houses and other buildings; (2) that their painting with products of other companies had always been satisfactory; (3) that, on account of weather conditions, they did not use appellant's paint until February, 1945; (4) that by April, 1945, the paint which appellees used in February, 1945, had washed off the buildings; (5) that they then ascertained that appellant's paint was worthless as paint; and (6) that appellees thereupon paid for the paint used and shipped the unused portion to appellant. Persons, on whose buildings the appellant's paint had been used by appellees, testified that the paint was worthless.

Appellees testified that they could not tell whether appellant's paint would be worthless until they tried it on buildings; and that, as soon as they ascertained the worthless nature of the paint, they paid for the portion used and promptly shipped the unused portion to appellant. The record is replete with correspondence between the parties: appellees protesting about the paint, and appellants refusing to accept the returned shipment. The orders, which the appellees signed when they ordered the paint from appellant, contain no language stipulating against an implied warranty—even if such could be done —so the law implies that the paint was to be reasonably fit for use as paint. A jury question was made as to whether appellant's paint fulfilled the implied warranty.

In the recent case of *Hydrotex Industries* v. *Floyd*, 209 Ark. 781, 192 S. W. 2d 759 we pointed out that, in dealings concerning a product such as paint, there exists an implied warranty that the product is reasonably fit for use for the purpose for which it is deliberately sold. See, also, *Johnson* v. *Madison Paint Co.*, 170 Ark. 1193, 281 S. W. 358 and *Mo. Paint & Varnish Co.* v. *Merck*, 170 Ark. 1037, 282 S. W. 270. In *Bowser* v. *Kilgore*, 100 Ark. 17, 139 S. W. 541, we quoted with approval this language:

" 'When a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies on his (manufacturer's) knowledge of his own manufacture. In such cases the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which they were intended.' ".

The case of *Hydrotex Industries* v. *Floyd, supra,* shows that the result is the same as regards implied warranty, whether determined by the law of Texas or the law of Arkansas.

Appellant says that by reason of certain telephone conversations, it had allowed appellees 15 days from receipt of the paint in which to elect whether to return the shipment or keep it; and appellant insists that when appellees retained the paint past the 15-day period, they thereby waived the implied warranty. But, in this contention the appellant is confusing the contract as made between the parties with the implied warranty as made by law. If appellees had returned the paint in 15 days, they would have followed the agreed provisions between the parties without knowing whether the paint was good or bad. The evidence shows that they had to apply the paint to a building, and determine the weather effect, before they could learn of the breach of the implied warranty. That is what they did; and when they ascertained that the paint was worthless, they had a right to invoke the implied warranty, which existed in addition to the contractual provisions. In *Johnson* v. *Madison Paint Co., supra,* we said:

"Where there is a breach of warranty, in order to rescind, there must be a return of the property, or an offer to return it, within a reasonable time; but, where the property is wholly unfit for the intended use, an offer to return the property in order to rescind is not essential."*

We conclude that a question of fact was made for the jury on the issue of whether the appellant violated

---

* There is only a memorandum in the Arkansas Report; the full opinion is contained in the Southwestern Reporter.

the implied warranty that the paint was reasonably fit for the use for which it was designed, *i. e.*, the painting of houses and other buildings. Appellees produced evidence that the paint was worthless, so the appellant's prayer for an instructed verdict was correctly refused.

II. *Instructions.* Appellant says that the trial court was in error in giving instruction No. 3, which reads as follows:

"So if you find from a fair preponderance of the evidence that the product sold the defendants was not reasonably fit for the use for which it was intended; and that the defendants, within a reasonable time after discovering the product was not fit for the use for which it was intended, returned the products to the plaintiff, then your verdict will be for the defendants."

This instruction was not inherently erroneous. It was evidently framed from the language of this court in the case of *Johnson* v. *Madison Paint Co., supra,* as previously quoted. When we consider this instruction along with the others which the court gave—some of which are not abstracted by appellant—, and when we consider that the appellant offered to this instruction only a general objection, we reach the conclusion that appellant's complaint, concerning this instruction, is unavailing.

No error appearing, the judgment of the lower court is affirmed.